IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY SYPNIEWSKI, | ) | |
| on behalf of plaintiff and the class | ) | |
| described herein, | ) | |
| | ) | 08 C 239 |
| Plaintiff, | ) | Judge Gettleman |
| | ) | |
| vs. | ) | |
| | ) | |
| NCO FINANCIAL SYSTEMS, INC., | ) | |
| and LVNV FUNDING LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 12 MOTION

Defendants NCO and LVNV have filed a motion variously denominated a motion to dismiss and a motion for judgment on the pleadings. The motion disingenuously attempts to contradict not only the complaint but allegations admitted by defendants.

**I.    FACTS**

Defendant NCO Financial Systems, Inc. ("NCO") is engaged in the business of a collection agency, using the mails and interstate wires to collect debts originally owed to others. (Cmplt., ¶6). NCO is a debt collector as defined in the FDCPA. (Cmplt., ¶7).

NCO describes its business activities on its Web site as follows (Cmplt., ¶8):

NCO offers litigation services through its Attorney Network Services™. NCO Attorney Network Services designs and implements cost-effective legal collection solutions for creditors across the country, managing nationwide legal resources complemented by modern facilities, leading-edge technology, and the expertise needed to achieve results.

We meet the needs of creditors large and small, whether their requirements call for the implementation of a pre-litigation collection campaign for selected accounts or for a nationwide bankruptcy recovery program. We improve our clients' bottom line through customization, working closely with them to identify and implement solutions that yield quality results.

NCO Attorney Network Services consist of the following:

- Pre-litigation Collections
- Attorney Network Collections (Litigation)

- Bankruptcy Recovery Programs
- Reaffirmation Invitation Programs
- Non-Dischargeable Debt Programs
- Nationwide Motions Filing
- Nationwide Replevin Filing
- Probate Accounts
- Suit Scoring
- Arbitration Services
- NCOeRecoverEase™

Defendant LVNV Funding LLC ("LVNV") is engaged in the business of using the mails and interstate wires to purchase and collect charged off debts. (Cmplt., ¶11). LVNV is a debt collector as defined in the FDCPA. (Cmplt., ¶13). During the past year more than 1,000 debt collection lawsuits have been filed in Illinois courts by LVNV. (Cmplt., ¶14).

On or about February 2, 2007, a lawsuit was filed in the name of LVNV against Shirley Sypniewski in the Circuit Court of Cook County, Illinois, Case No. 07 M1 108143, for the purpose of collecting a purported credit card debt incurred for personal, family, or household purposes. (Cmplt., ¶15). The summons, complaint, and an attached affidavit of Tracey Eccles (Cmplt., Exhibit A) were served on Shirley Sypniewski in mid-2007. (Cmplt., ¶16). Exhibit A is a form affidavit regularly filed in collection actions brought in the name of LVNV in Illinois. (Cmplt., ¶17).

The Tracey Eccles who executed Exhibit A was in fact an employee of NCO. (Cmplt., ¶18, admitted in NCO Answer, ¶18). Tracey Eccles is not an employee of LVNV. (Cmplt., ¶19, admitted in NCO Answer, ¶19). Tracey Eccles and other employees of NCO regularly executed affidavits similar to Exhibit A as "agent" of LVNV and possibly other alleged owners of debts. (Cmplt., ¶20, admitted as to Eccles in NCO Answer, ¶20).

NCO is performing "Attorney Network Services" as described above in cases where its employee prepares documents in the form of Exhibit A. (Cmplt., ¶21, admitted in NCO Answer, ¶21).

The affidavits in the form of Exhibit A are false. Contrary to the statements in the affidavit, Tracey Eccles and other employees of NCO are not qualified to testify about the

computer records of LVNV or any predecessor of LVNV or the procedures used by LVNV or any predecessor of LVNV to generate computer records, and could not "testify at trial as to all facts pertaining to this matter." (Cmplt., ¶22).

Exhibit A does not disclose the fact that the signatory is an employee of NCO. (Cmplt., ¶23). By describing the affiant as an "agent" of plaintiff, without identification of the company for which the affiant works, Exhibit A conceals the identity of the business preparing the document, NCO, and appears to come from LVNV. (Cmplt., ¶24).

In this action, plaintiff contends that the affidavits in the form of Exhibit A are false and violate the FDCPA, 15 U.S.C. §1692e. In addition, by describing the affiant as an "agent" of the plaintiff, LVNV, without identification of the company for which the affiant works, Exhibit A conceals the identity of the business preparing the document, NCO, and amounts to the use by NCO of a business, company, or organization name ("LVNV Funding LLC ") other than the true name of the debt collector's business, company, or organization. This violates 15 U.S.C. §1692e(14), which makes unlawful "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization...." By filing such affidavit in its lawsuit, or permitting its filing, LVNV participated in the deceptive practice, in violation of 15 U.S.C. §1692e. Finally, plaintiff contends that the unauthorized practice of law by NCO and NCO's supplying of bogus affiants for compensation violates 15 U.S.C. §§1692e and 1692f.

## II.   THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. §1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods;

conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the:

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . .  [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes.  Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation.  Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages.  Bartlett v. Heibl, 128 F.3d 497, 499  (7th Cir.1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D. N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D. Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein.  Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666

(7th Cir. 2001); Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981).  "Congress intended the Act to be enforced primarily by consumers...."  FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980).  "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them...."  Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case.  The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff."  Cacace v. Lucas, 775 F. Supp. at 505.  Accord, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir.2000).

**III.    THE USE OF FALSE AFFIDAVITS IS AN FDCPA VIOLATION**

The FDCPA prohibits any false statement by a debt collector.  Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004).  "Debt collectors may not make false claims, period."  Randolph, 368 F.3d at 730.

Making false statements in affidavits or other documents filed in collection lawsuits is an FDCPA violation.  Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 233-34 (4th Cir. 2007); Todd v. Weltman, Weinberg, & Reis Co., L.P.A., 434 F.3d 432 (6th Cir. 2006); Foster v. Velocity Invs., LLC, 07 C 0824 and 07 C 2989, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill., Aug. 24, 2007); Chavez v. Bowman, Heintz, Boscia & Vician, 07 C 670, 2007 U.S. Dist. LEXIS 61936 (N.D. Ill., Aug. 22, 2007);  Feltman  v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 06 C 2379, 2006 U.S. Dist. LEXIS 57579 (N.D. Ill., Aug. 16, 2006);  Hartman v. Asset Acceptance Corp., 467 F. Supp. 2d 769 (S.D. Ohio 2004); Jordan v. Thomas & Thomas, C-1-04-296, 2007 U.S. Dist. LEXIS 71404 (S.D. Ohio Sept., 26, 2007);  Lee v. Javitch, Block & Rathbone, LLP,  484 F. Supp. 2d 816 (S.D. Ohio 2007); Gionis v. Javitch, Block & Rathbone,

405 F. Supp. 2d 856 (S.D. Ohio 2005); Stolicker v. Muller, Muller, Richmond, Harms, Meyers & Sgroi, P.C., 1:04-cv-733, 2005 U.S. Dist. LEXIS 32404, 2005 WL 2180481 (W.D. Mich., Sept. 9, 2005); Delawder v. Platinum Financial, 443 F. Supp. 2d 942 (S.D. Ohio 2005), later opinion, 1:04-cv-680, 2007 U.S. Dist. LEXIS 31174 (S.D. Ohio, Apr. 27, 2007); Blevins v. Hudson & Keyse, Inc., 395 F. Supp. 2d 655 (S.D. Ohio 2004), later opinion, 395 F.Supp.2d 662 (S.D. Ohio 2004); Eads v. Wolpoff & Abramson, LLP, EP-07-cv-229-PRM, 2008 U.S.Dist. LEXIS 26309 (W.D. Tex., Feb. 27, 2008). As demonstrated by the variety of defendants in these decisions – collection lawyers, debt buyers, etc. – all persons involved in preparing and using the false documents are liable.

   Defendants assert that the Eccles affidavits are not false because a person can "testify to information set forth in business records reviewed by the witness." (Def.Mem., p. 6). This is both untrue (see point V, below) and a blatantly improper attempt to contradict the complaint, which states that Eccles and other NCO employees are not qualified to testify about the computer records of LVNV Funding LLC or any predecessor of LVNV Funding LLC or the procedures used by LVNV Funding LLC or any predecessor of LVNV Funding LLC to generate computer records, and could not "testify at trial as to all facts pertaining to this matter." (Cmplt., ¶22). These allegations are sufficient to state a claim for relief.

   Furthermore, Defendants' application of Durkin v. Equifax Check Serv., Inc., 406 F.3d 410 (7th Cir. 2005) is misplaced. Plaintiff does not need an expert to prove her case. In Durkin, the Seventh Circuit reiterated that a plaintiff must retain an expert when the plaintiff contends that a collection letter is confusing and it is not self-evident from the face of the letter that it is confusing. Durkin, 406 F.3d 410, 414-415 (7th Cir. 2005). However, nothing in Durkin even remotely suggests that a plaintiff must retain an expert when a plaintiff claims that a document contains a false statement.

IV. **BY SUBMITTING THE AFFIDAVITS TO COURTS AND DEBTORS, NCO IS ENGAGING IN COLLECTION COMMUNICATIONS UNDER THE NAME OF LVNV**

The affidavit is a communication. "Communication" is defined in 15 U.S.C. §1692a(2) as "the conveying of information regarding a debt directly or indirectly to any person through any medium." The affidavit conveys information regarding a debt to both the court and, upon being attached to a complaint and served, the debtor.

Under 15 U.S.C. §1692e(14), "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization" is defined as a deceptive debt collection practice.

The affidavit in this case is executed by an employee of NCO. However, the affidavit does not refer to NCO. It is captioned "LVNV FUNDING LLC ASSIGNEE OF HSBC BANK NEVADA." Immediately below, the affiant states that she is executing the affidavit as "agent in the above captioned matter." The only entity identified is the state court plaintiff, LVNV.

By submitting an affidavit executed by one of its employees as "agent" of LVNV and captioned "LVNV FUNDING LLC" without disclosure of NCO's involvement, NCO is engaging in a communication using the name of LVNV, rather than the true name of its business, company or organization, NCO.

The Seventh Circuit has held that the "debt collector" subject to the FDCPA is the entity, not the individual acting on its behalf. In Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir. 2000), the court held that "[t]he debt collection company answers for its employees' violations of the statute." It necessarily follows that the "true name" of the debt collector is the true name of the collection entity, here NCO, not its employee.

Consistent with this principle, courts have repeatedly held that a debt collection company which merely provides the name of the individual acting on behalf of the company and not that of the company violates the FDCPA. For example, in Masciarelli v. Richard J.

Boudreau & Associates, LLC, 529 F. Supp. 2d 183 (D. Mass. 2007), the following voicemail message was alleged to violate the FDCPA because it did not accurately disclose the identity of the caller:

> Hi Shawn. Its Arthur Ormond [employee of Boudreau & Associates], we were just speaking. I'm not sure what happened. Why don't you give me a call tomorrow morning? Let me know how you want to handle it. If not I guess I can just contact your payroll department and we can take it from there. The number is toll free 866-890-1644 extension 225. If I don't hear from you, I'll assume that's what you want me to do. Thank you.

The court held that this message violated the FDCPA as a matter of law.  "Here, Boudreau [the debt collector] has admit[ted] to leaving a message on Masciarelli's voice-mail that, though in connection with the collection of a debt, failed to disclose Boudreau's identity as a debt collector in violation of the FDCPA.  Accordingly, Boudreau's message violated the FDCPA as a matter of law."

Similarly, in Hosseinzadeh v. M.R.S. Associates, Inc., 387 F. Supp. 2d 1104 (C.D. Cal. 2005), the court found unlawful a voicemail message stating:

> Hello, this is Thomas Hunt calling. Please have an adult contact me regarding some rather important information. This is not a sales call, however, regulations prevent me from leaving more details. You will want to contact me at 1-877-647-5945 as soon as possible. This is a toll free number. Once again this is Thomas Hunt calling and my number is 1-877-647-5945. Thank you.

The court held that the FDCPA required that "the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked."  Again, providing the name of the individual employee was not sufficient.   While the case was decided under 15 U.S.C. § 1692d(6), which prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity," the purpose of § 1692d(6) is obviously similar to that of § 1692e(14), in that both require that a debt collection organization to properly identify itself when communicating with a consumer.

Here, NCO is admittedly involved, as its employee submitted the affidavit.  It

must, therefore, communicate using its proper name and cannot just have its employee call herself "Eccles, agent of LVNV."  The affidavits are filed in lawsuits captioned "LVNV Funding LLC," and purport to come from LVNV.  Disclosure of the fact that the affiant is an employee of NCO raises the obvious question of how an employee of NCO could testify about a debt that NCO never owned.  As set forth in the next section, defendants' arguments that an NCO employee could testify to the facts concerning debts that LVNV allegedly purchased from numerous credit card issuers, including HSBC, Citibank, Sears, and GE Capital (see examples of affidavits in Appendix A) – *none* of whom were authorized by LVNV or NCO to generate any records on behalf of NCO or LVNV  –  are bogus and are based on the citation of cases for the exact opposite of what they hold.

If defendants really believed the testimony was proper, they would not conceal the fact that the affiant is employed by NCO.  ***Whether or not the testimony is proper, defendants cannot try to avoid the obvious challenge that disclosure of NCO's role suggests by fraudulently concealing the role of NCO.***  By making the affidavit appear to come from LVNV, the purported owner of the debt, NCO is using a name other than the true name of NCO's "business, company, or organization."

None of the cases defendants cite on the §1692e(14) issue is even remotely on point.  In Weinstein v. Fink, 99 C 7222, 2001 U.S.Dist. LEXIS 2075, 2001 WL 185194  (N.D. Ill., Feb. 26, 2001), which defendants discuss for two pages (Def.Mem., pp. 9-11) the court took pains to note that the collection agency, Payco, that referred the owner of the debt, Evanston Hospital, to the attorney, Fink, did not engage in any communications without identifying itself. "Obviously, Weinstein was more than clear as to Payco's role in this debt collection process." (2001 U.S.Dist. LEXIS 2075, *16).  In this case, on the other hand, a debtor or court looking at the Eccles affidavit is not "more than clear" as to NCO's role in the debt collection process. NCO's role is completely concealed.  That defendants would cite a case in which a collection agency always used its true name when communicating with others as support for the

proposition that NCO can engage in communications under the name LVNV underscores the meritlessness of their arguments.

Defendants also make wholly inappropriate factual assertions, such as whether they intended "to mislead or deceive the consumer." (Def.Mem., p. 10). There is an obvious motive for concealing the fact that Eccles works for NCO; the complaint alleges that defendants intended to conceal that fact; a jury could infer that defendants intended the natural and probable consequences of their actions; and defendants are not entitled to argue their supposed good faith on a Rule 12 motion.

## V.    A WITNESS CANNOT TESTIFY TO THE CONTENTS OF RECORDS SHE LOOKED AT

Defendants' theory that Eccles can testify about records of multiple third parties (HSBC, GE Capital, Sears, etc.) is unfounded. As defendants themselves admit, an affidavit "is actually a substitute for testimony taken in open court and should meet the same requirements as competent testimony." Skipper Marine Electronics, Inc. v. United Parcel Service, Inc., 210 Ill.App.3d 231, 236, 569 N.E.2d 55, 59 (1st Dist. 1991) (Def.Mem., p. 8). Affidavits must therefore be based "on the personal knowledge of the affiants," "shall have attached thereto sworn or certified copies of all papers upon which the affiant relies," "shall not consist of conclusions but of facts admissible in evidence," and "shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill.Sup.Ct. R. 191(a). In any case where an affidavit is submitted, the court may require the affiant to testify in person. 735 ILCS 5/2-1103.

A witness cannot, in person or by affidavit, testify that unnamed and untendered bank records show that a person owes money. Cole Taylor Bank v. Corrigan, 230 Ill.App.3d 122, 129, 595 N.E.2d 177, 181-82 (2nd Dist. 1992) (where bank officer's "affidavit essentially consisted of a summary of unnamed records at the bank," unaccompanied by records themselves and unsupported by facts establishing basis of officer's knowledge, foundation was lacking for

admission of officer's opinion regarding amount due on loan).  Testimony, whether live or in the form of an affidavit, to the effect that the witness has reviewed a loan file and that the loan file shows that the debtor is in default is hearsay and incompetent; rather, the records must be introduced after a proper foundation is provided.  Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 222, 11 P.3d 1 (2000).  It is the business records that constitute the evidence, not the testimony of the witness referring to them.  In re A.B., 308 Ill.App. 3d 227, 236, 719 N.E.2d 348 (2nd Dist. 1999) ("Under the business records exception ... it is the business record itself, not the testimony of a witness who makes reference to the record, which is admissible....  In other words, a witness is not permitted to testify as to the contents of the document or provide a summary thereof; the document speaks for itself. M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §803.10, at 825 (7th ed. 1999)."); Topps v. Unicorn Ins. Co., 271 Ill. App. 3d 111, 116, 648 N.E.2d 214 (1st Dist. 1995) ("under the business record exception to the hearsay rule, only the business record itself is admissible into evidence rather than the testimony of the witness who makes reference to the record").

   A witness cannot "testify" by regurgitating the content of business records that a witness has reviewed when the witness has not seen or heard the events in question.  Such regurgitation is hearsay, plain and simple.  Wahad v. Federal Bureau of Investigation, 179 F.R.D. 429, 438 (S.D. N.Y 1998); In re McLemore, 2004 Ohio 680, 2004 Ohio App. LEXIS 591, *P9 (Ohio App. 2004).  A witness cannot look at a computer screen and testify what she saw, even if a printout from the computer could be qualified as a business record; the evidence is the record and the record must be introduced.  Nebraska v. Ward, 510 N.W.2d 320, 324 (Neb. App. 1993).  "There is no hearsay exception ... that allows a witness to give hearsay testimony of the content of business records based only upon a review of the records."  Grant v. Forgash, 1995 Ohio App. LEXIS 5900, *13 (Ohio App. 1995).  Nor is such testimony made sufficient by omitting the fact that it is based on a review of records, if it appears that the witness or affiant did not personally witness every transaction.  Keka, supra, 11 P.3d at 10.

Defendants' statement (p. 7) that Eccles can testify because "it makes no difference whether the business records being offered are those of a party or of a third person authorized by the business to generate the record on the business's behalf" is nothing short of an attempt to mislead the Court. The case cited, Argueta v. Baltimore & Ohio, 224 Ill.App.3d 11, 12-14, 586 N.E.2d 386 (1st Dist. 1991), actually holds that if records are those of business A, they can be treated as records of business B only if A was authorized by B to generate the records on behalf of B as part of B's ordinary business activities:

> A number of Illinois cases have held that documents produced by third parties were inadmissible as business records. In each of these cases, the documents were not commissioned by the business seeking to introduce them into evidence, albeit the documents were retained in the business files. International Harvester Credit Corp. v. Helland (1986), 151 Ill. App. 3d 848, 503 N.E.2d 548 (minutes of board of director's meeting of a company were not the business records of a second company); Pell v. Victor J. Andrew High School (1984), 123 Ill. App. 3d 423, 462 N.E.2d 858 (letter from a manufacturer was not the business record of a second manufacturer); Benford v. Chicago Transit Authority (1973), 9 Ill. App. 3d 875, 293 N.E.2d 496 (a note made by employee's private physician was not the business record of employer).
>
> By contrast, a business report generated by a third party has been held to be admissible when it was commissioned in the regular course of business of the party seeking to introduce it. Birch v. Township of Drummer (1985), 139 Ill. App. 3d 397, 487 N.E.2d 798 (survey of an engineering firm commissioned by county admissible as business record of the county).
>
> The key consideration is the authority of the third party to act on the business' behalf. Where a third party is authorized by a business to generate the record at issue, the record is of no use to the business unless it is accurate and, therefore, the record bears sufficient indicia of reliability to qualify as a business record under the hearsay rule. See also N.L.R.B. v. First Termite Control Co., Inc. (9th Cir. 1981), 646 F.2d 424; Fed. R. Evid. 803(6); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 803.10, at 647 (5th ed. 1990).
>
> Accordingly, we find that the trial court erred in its ruling that the ultrasonic test reports were inadmissible. The reports were the business records of B&OCT. Although the reports were generated by Calumet and Conam, the tests were performed at the direction of the railroad in the regular course of its business.

Here, neither NCO nor LVNV commissioned the preparation of any records by HSBC, Citibank, Sears or GE Capital for use in the business of NCO or LVNV. An employee of a debt buyer is not competent to offer testimony concerning the records of an assignor. PRA III, LLC v. Mac

12

Dowell, 15 Misc. 3d 1135A, 841 N.Y.S.2d 822 (N.Y. Civ. Ct. 2007) ("Elaine F. Lark, a legal specialist of the plaintiff" is "not an employee of the original creditor (Sears) and cannot authenticate documents from another business").

Here, the affiant does not know how the records were made or by whom. The affiant states "[t]hat Plaintiff maintains, in the regular course of business, computer records on which entries are made by a person with knowledge of the information therein and/or information transmitted from a person with such knowledge." The affiant does not know who made the entries, what that person knows, or even for which company that person works.

Even apart from this, a "foundation for computer-generated records is established when it is shown that the equipment which produced the record is recognized as standard, the entries were made in the regular course of business at or reasonably near the happening of the event recorded and the sources of information, method and time of preparation were such as to indicate their trustworthiness and to justify their admission." Riley v. Jones Bros. Constr. Co., 198 Ill. App. 3d 822, 829, 556 N.E.2d 602 (1st Dist. 1990). It is extremely unlikely that an employee of NCO would have sufficient familiarity with the computerized recordkeeping systems of multiple credit card issuers – GE Capital, HSBC, Sears, Citibank, etc. – to be able to truthfully testify to these matters for all of them.

Defendants rely on Champaign Nat'l Bank v. Babcock, 273 Ill. App. 3d 292, 298, 652 N.E.2d 848 (4th Dist. 1995), as supporting the competence of the Eccles affidavits. Defendants cite the case for the exact opposite of what it held. The court expressly acknowledged that "it is the business record itself, not the testimony of a witness who makes reference to the record, that is admissible." While the court further held that if the underlying records are voluminous, a person who has extracted the necessary information may summarize it, this requires that "the mass of documents must be placed in the hands of the court or be made accessible to the opposing party for inspection." Here, the Eccles affidavits are never accompanied by any "mass of documents." Indeed, Eccles does not even know who made the

entries or even which company they worked for. Plaintiff expects the evidence to show that NCO and LVNV obtain virtually no documents from the credit card issuers. The Babcock case therefore requires exclusion of Eccles' "testimony," not its admission.

It is important to note that plaintiff is not claiming that technical evidentiary problems give rise to an FDCPA violation. Rather, the evidentiary problems furnish the motive for fraud and perjury. In an effort to avoid glaring evidentiary problems, defendants (1) had NCO submit affidavits under the name of LVNV and (2) knowingly misrepresented in such affidavits that the affiant was qualified to testify to their contents. False affidavits violate the FDCPA, as does the use by NCO of the name LVNV in communicating with courts and putative debtors.

## VI.  NCO VIOLATED THE FDCPA BY ENGAGING IN THE UNAUTHORIZED PRACTICE OF LAW

Defendants claim that NCO is not engaged in the unauthorized practice of law by merely preparing affidavits. This is another improper attempt to contradict the complaint, which alleges (based on NCO's own Web information) that NCO "designs and implements" legal strategies and is engaged in "managing nationwide legal resources." (Cmplt., ¶8).

Illinois prohibits a non-attorney collection agency which does not hold title to a debt – such as NCO in this case – from "tak[ing] any action that in fact or in appearance interferes with the professional relationship between the attorney and the creditor." 225 ILCS 425/8a-1. The designing and implementation of legal strategies and managing the attorneys does precisely that, and constitutes the unauthorized practice of law. By causing lawsuits to be filed when it was prohibited from doing so by Illinois law, NCO violated the FDCPA. Furthermore, one of the reasons for prohibiting lay intermediaries for conducting litigation for others is that they may engage in conduct prohibited to attorneys, such as concocting perjured affidavits.

Threatening to take or taking action which constitutes the unauthorized practice of law, such as when a collection agency files suit to collect a debt when it is not permitted to do

so under state law, violates the FDCPA. Poirier v. Alco Collections, Inc., 107 F.3d 347 (5th Cir. 1997) (where collection agency filed suit as agent for client and doing so constituted unauthorized practice under state law, filing violated FDCPA); Jones v. Vest, 3:00CV287, 2000 U.S. Dist. LEXIS 18413 (E.D. Va., Nov. 7, 2000) (where collection agency's involvement in causing filing of collection lawsuit violated state law against unauthorized practice, filing violated FDCPA); Marchant v. U.S. Collections, Inc., 12 F.Supp. 2d 1001 (D. Ariz. 1998) (lay employee of debt collector who prepared and filed garnishment writs where only licensed attorney was permitted to do so under state law violated FDCPA); Withers v. Eveland, 988 F.Supp. 942, 946 (E.D. Va. 1997) (collection agency which threatens suit when its actually doing so would constitute unauthorized practice violates FDCPA); Kolker v. Duke City Collection Agency, 750 F. Supp. 468, 469 (D. N.M. 1990) ("One collection practice explicitly rendered unlawful by Congress involves the unauthorized practice of law by debt collection agencies." The FDCPA provides that "[n]othing in this title shall be construed to authorize the bringing of legal actions by debt collectors." 15 U.S.C. § 1692i(b).).

Defendants' arguments are wholly unpersuasive. They rely on a 2002 magistrate judge's decision that a collection attorney who was duly licensed engaged in "unauthorized practice" by failing to properly disclose his corporate affiliation in addition to his own name. Bass v. Arrow Financial Services, 01 C 8595, 2002 U.S.Dist. LEXIS 12909, 2002 WL 1559635 (N.D. Ill, June 16, 2002). The Bass case is utterly irrelevant to whether NCO, who is not a licensed attorney or professional corporation, engages in unauthorized practice or violates the FDCPA when it "designs and implements" legal strategies and engages in "managing nationwide legal resources."

The violation is not dependent on who has the right to proceed against the unauthorized practice under state law. The FDCPA expressly states that it was enacted because "[e]xisting laws and procedures for redressing" the use of improper debt collection practices were "inadequate to protect consumers." 15 U.S.C. §1692(a), (b). If the inadequacy of non-

FDCPA law to protect consumers barred an action under the FDCPA, its enactment was meaningless.

## VII.  CONCLUSION

      For the reasons stated, defendants' motion to dismiss should be denied.

      Respectfully submitted,

      s/ Daniel A. Edelman
      Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on June 5, 2008, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice to the following:

James K. Schultz
Sessions, Fishman, Nathan & Israel, LLP
1000 Skokie Blvd.
Suite 430
Wilmette, IL  60091

David Israel
Sessions, Fishman & Nathan LLP
3850 North Causeway Boulevard
Lakeway Two, Suite 1240
Metarie, LA  70002

David M. Schultz
Todd P. Stelter
Hinshaw & Culbertson, LLP
222 North LaSalle Street
Suite 300
Chicago, IL  60601

                                                                                    s/ Daniel A. Edelman
                                                                                    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)